**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO**

LOWER, LLC,

      Plaintiff,

v.

ATLANTIC COAST MORTGAGE, LLC,

      Defendant.

:   Case No. 2:26-cv-00319
:
:
:   **JURY TRIAL DEMANDED**
:
:
:
:
:

## COMPLAINT

Now comes Plaintiff Lower, LLC ("Lower"), by and through counsel, and for its Complaint against Defendant Atlantic Coast Mortgage, LLC ("ACM") alleges as follows:

1.     ACM engaged in a coordinated effort, upon information and belief, with Lower senior executive Nicholas Gallagher ("Gallagher"), along with other Lower employees, to systematically raid the company's workforce and siphon its customers. ACM knew or should have known Gallagher and other Lower employees made covenants with Lower not to solicit Lower's employees, customers, and referral sources but intentionally attempted to compete with Lower unfairly by tortiously interfering with Lower's contractual and business relationships and theft of Lower's confidential trade secret information.

### Parties, Jurisdiction and Venue

2.     Plaintiff Lower is a Maryland limited liability company with its principal place of business at 5950 Symphony Woods Road, Suite 312, Columbia, Howard County, Maryland 21044, that maintains an office at 711 North High Street, Floor 7, Columbus, Franklin County, Ohio 43215, and whose member is a citizen of Delaware.

1

3.      Defendant ACM is a Virginia limited liability company with its principal place of business, upon information and belief, at 4097 Monument Corner Drive, Suite 600, Fairfax, Fairfax County, Virginia 22030.

4.      This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332. The amount in controversy exceeds $75,000, and both parties are citizens of different States.

5.      This Court has personal jurisdiction over ACM because, among other reasons, it regularly conducts business in Ohio, it maintains a business license in Ohio, it has committed one or more torts causing harm to Lower in Franklin County, Ohio, and it coordinated with one or more of Lower's employees in Ohio to tortiously interfere with Lower's relationships with its employees and customers, including those in Ohio.

6.      Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this claim occurred in this District.

### Factual Allegations

7.      Lower is a mortgage lender that operates both a digital, multi-channel platform and more than eighty (80) retail branches for the origination of mortgages for home purchase and refinancing, as well as home equity solutions.

8.      ACM is a direct competitor to Lower in the residential mortgage lending industry.

9.      On February 9, 2026, twenty-six (26) of Lower's employees abruptly announced their resignation without notice or warning.

10.     All twenty-six (26) of these employees immediately began working at ACM.

11.     These employees held positions at all different levels, from junior employees all the way up to senior executive positions that carried with them a heightened level of responsibility and trust.

2

12.     The employees that left to join ACM included but were not limited to salespeople, junior and senior mortgage loan officers, loan processors, branch managers, divisional managers, operations managers, and at the top was Lower's Chief Production Officer.

13.     In some cases, ACM raided entire Lower branches, and in other branches, only a few Lower employees remain.

14.     The vast majority of these employees had made covenants in their employment agreements with Lower not to solicit employees of Lower, nor to solicit Lower's customers and referral sources, for the benefit of another employer during their employment or for a period of not less than twelve months following termination of their employment.

15.     The covenants contained in the former employees' employment agreements prohibited both direct and indirect solicitation, thereby prohibiting ACM from doing, at the employees' direction, that which the employees themselves were prohibited from doing under their agreements.

16.     These employees also agreed to keep confidential, and not disclose, Lower's confidential and proprietary information, which expressly included internal personnel information, employee compensation arrangements, and all non-public personal information provided by customers to Lower. All employees acknowledged and agreed such information was in the nature of a trade secret.

17.     Upon information and belief, it was Lower's Chief Production Officer, Nicholas Gallagher ("Gallagher"), located in Westerville, Ohio, that orchestrated the large-scale and coordinated effort to move certain Lower employees to ACM and to take Lower customers with them to ACM.

3

18.     Upon information and belief, prior to their departure from Lower, Gallagher and other Lower employees accessed and obtained confidential information regarding Lower's loan pipeline, including the identities and contact information of borrowers whose loan applications were pending with Lower, as well as referral partners and prospective borrowers who had expressed interest in obtaining mortgage services from Lower. Using this non-public information, former Lower employees acting on behalf of ACM contacted these borrowers and prospective customers and solicited them to transfer their loan applications and mortgage business to ACM.

19.     Upon information and belief, ACM was aware of Gallagher's covenants of non-solicitation of employees, customers, and referral sources, and was aware that other Lower employees were subject to substantially similar covenants, but nonetheless worked with him and/or other former Lower employees to raid Lower's workforce and take Lower's pre-existing customers to ACM.

20.     If ACM was not aware of Gallagher's and other employees' covenants, it was willfully ignorant, as such covenants are common in the mortgage lending industry.

21.     ACM was likewise aware that internal personnel information and non-public personal information provided by current and potential customers is considered confidential in the mortgage loan industry and would be subject to a non-disclosure agreement.

22.     ACM systematically targeted certain Lower employees at Gallagher's and/or other former Lower employees' direction.

23.     ACM would not know to target the employees that ultimately left Lower absent coordination with Gallagher and/or other former Lower employees and through disclosure of confidential internal personnel information.

4

24.     ACM was put on direct notice of Gallagher's and other employees' covenants, nonetheless, by written correspondence from Lower sent on February 10, 2026.

25.     Even so, ACM continues to target and recruit particular Lower employees at Gallagher's and/or other former Lower employees' direction.

26.     As a result, five (5) more employees abruptly terminated their employment with Lower on March 4, 2026 and immediately joined ACM.

27.     As a result of solicitation by former Lower employees on behalf of ACM, numerous customers with in-process loan applications with Lower have transferred their loan applications to ACM. These former Lower employees have reached out to Lower customers using their non-public customer information, which they provided confidentially to Lower, in order to solicit them to move to ACM.

28.     As a result of ACM's unfair competition and unjustified interference with its employees and customers, Lower has lost employees and customers, and has been damaged and suffered substantial and irreparable harm, for which there is no adequate remedy at law. Lower estimates it will lose significant profits due to ACM's interference.

## COUNT I – TORTIOUS INTERFERENCE OF EXISTING RELATIONSHIPS

29.     Lower hereby incorporates the above allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

30.     On information and belief, ACM was fully aware of Gallagher's and other employees' covenants before hiring them.

31.     At the latest, ACM was aware of Gallagher's and other employees' covenants upon receipt of correspondence from Lower on February 10, 2026.

32.     Nonetheless, ACM intentionally participated with Gallagher and other former Lower employees in procuring breaches of their employment agreements, specifically their covenants against non-solicitation of employees, customers, and referral sources.

33.     ACM knew of the existence of these relationships.

34.     ACM's interference caused termination of its relationships with its employees and customers.

35.     ACM's improper interference with its relationships with its employees and customers has damaged Lower, and Lower will continue to incur substantial and irreparable harm for which there is no adequate remedy at law.

**COUNT II – TORTIOUS INTERFERENCE OF PROSPECTIVE BUSINESS RELATIONSHIPS**

36.     Lower hereby incorporates the above allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

37.     Lower maintains prospective business relationships with numerous customers, potential borrowers, and referral sources in connection with its mortgage lending operations.

38.     At the time of the events described herein, Lower had active and prospective business relationships with numerous individuals whose mortgage loan applications were pending with Lower or who were in the process of obtaining mortgage lending services from Lower.

39.     Defendant ACM knew or should have known of these prospective business relationships, including customers whose loan applications were currently in process with Lower and prospective customers who had expressed interest in obtaining mortgage services from Lower.

40.     Despite that knowledge, ACM intentionally and improperly interfered with these prospective relationships by coordinating with Gallagher and other former Lower employees to solicit Lower's customers and prospective borrowers.

41.     ACM encouraged or knowingly permitted former Lower employees to use Lower's confidential and proprietary information—including non-public customer information and loan pipeline data—to solicit Lower's customers and persuade them to move their potential mortgage business from Lower to ACM.

42.     As a direct result of ACM's actions, numerous customers terminated or abandoned their prospective relationships with Lower and instead transferred their loan applications and business to ACM.

43.     ACM's interference was intentional, malicious, and undertaken for the purpose of disrupting Lower's prospective business relationships and diverting those opportunities to ACM.

44.     As a direct and proximate result of ACM's tortious interference with Lower's prospective business relationships, Lower has suffered and will continue to suffer substantial damages, including but not limited to lost loan originations, lost profits, loss of goodwill, and harm to its business reputation.

45.     Lower has been and continues to be irreparably harmed by ACM's conduct and has no adequate remedy at law.

**COUNT III – MISAPPROPRIATION OF TRADE SECRETS IN VIOLATION OF THE DEFEND TRADE SECRETS ACT (18 U.S.C. § 1836)**

46.     Lower hereby incorporates the above allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

47.     ACM was aware that Lower's former employees had access to and knowledge of Lower's confidential and proprietary information, including internal personnel information and non-public customer information.

48.     This information is not known to the general public, is not readily ascertainable by proper means by persons or entities who can derive economic value from its disclosure or use, and was developed by Lower for its exclusive benefit. Lower has taken reasonable and appropriate measures to maintain the secrecy and confidentiality of this information by limiting access to said information and maintaining policies and practices designed to preserve the confidential nature of such information.

49.     Under 18 U.S.C. § 1836, *et seq.*, Lower's confidential internal personnel information and non-public customer information constitute "trade secrets." Lower's employees expressly acknowledged and agreed the information was trade secret.

50.     ACM has received and possesses such information, knowing the same to have been stolen or appropriated, obtained, or converted without authorization.

51.     Lower has been damaged by ACM's misappropriation of trade secrets and will continue to incur substantial and irreparable harm for which there is no adequate remedy at law.

## COUNT IV – MISAPPROPRIATION OF TRADE SECRETS IN VIOLATION OF THE OHIO UNIFORM TRADE SECRETS ACT

52.     Lower hereby incorporates the above allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

53.     The Ohio Uniform Trade Secrets Act (OHIO REV. CODE § 1333.61 *et seq.*) prohibits the misappropriation of trade secrets.

54.     Lower's proprietary information including, among other things, loans in process, leads, employment practices, and nonpublic borrower, financial, and personal information, constitutes trade secrets in accordance with the Ohio Uniform Trade Secrets Act.

55.     Lower derives independent economic value from this confidential data and trade secrets.

56.     This information is not known to the general public, is not readily ascertainable by proper means by persons or entities who can derive economic value from its disclosure or use, and was developed by Lower for its exclusive benefit. Lower has taken reasonable and appropriate measures to maintain the secrecy and confidentiality of this information by limiting access to said information and maintaining policies and practices designed to preserve the confidential nature of such information.

57.     ACM was aware that Lower's former employees had access to such information.

58.     ACM has received and possesses such information, knowing the same to have been stolen or appropriated, obtained, or converted without authorization.

59.     Lower has been damaged by ACM's misappropriation of trade secrets and will continue to incur substantial and irreparable harm for which there is no adequate remedy at law.

### COUNT V – CIVIL CONSPIRACY

60.     Lower hereby incorporates the above allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

61.     Beginning at least in January 2026, Gallagher, ACM, and potentially other former Lower employees conspired to take the tortious actions described herein together against Lower.

62.     While Gallagher was still employed at Lower, he solicited several employees to join ACM and provided ACM with Lower's proprietary and confidential information regarding

9

them. Moreover, while Gallagher and others were still employed at Lower, they referred several business opportunities to ACM and provided ACM with Lower's proprietary and confidential information regarding these opportunities. Thus, working in concert, ACM took business opportunities and other Lower property, and Lower's ability to pursue business opportunities through its employees from Lower.

63. ACM took this tortious action in direct violation of applicable laws, for the primary purpose of taking business from Lower and to ACM.

## COUNT VI – CONSTRUCTIVE TRUST

64. Lower hereby incorporates the above allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

65. Through the conduct described above, ACM knowingly obtained and continues to obtain benefits derived from the wrongful conduct alleged in this Complaint.

66. ACM obtained and continues to obtain revenues, commissions, and other profits derived from its unlawful conduct involving the solicitation and recruitment of Lower employees, the diversion of Lower's customers and prospective borrowers, the use of Lower's confidential information and trade secrets, and diversion of Lower's business opportunities and loan pipeline.

67. Described herein are the various schemes and unlawful conduct deployed by ACM to irreparably harm Lower and unjustly enrich ACM. Equitable principles relate that any profits and revenue derived from the wrongful behavior herein rightfully belong to Lower.

68. Lower is entitled to the imposition of a constructive trust over all revenues, profits, commissions, and other benefits ACM obtained as a result of ACM's actions.

69.     Such profits include, without limitation, commissions and revenues derived from mortgage loans originated by ACM for borrowers who were previously customers or prospective customers of Lower.

70.     Unless ACM is ordered to disgorge these profits and the Court imposes a constructive trust over such funds, ACM will be unjustly enriched at Lower's expense.

71.     Lower further seeks an accounting of all revenues and profits ACM derived from the conduct described herein.

72.     Accordingly, Lower requests that the Court impose a constructive trust over the revenues, profits, commissions, and other benefits ACM obtained as a result of its unlawful conduct and order ACM to disgorge such amounts to Lower.

WHEREFORE, Lower prays for judgment in its favor and against ACM in an amount to be determined at trial along with preliminary and permanent injunctive relief, consequential damages in an amount to be determined, punitive damages in an amount to be determined, attorneys' fees, costs, and other such relief as the Court may deem just and proper.

### JURY DEMAND

Lower demands a trial to a jury on all issues so triable.

Dated: March 17, 2026               Respectfully submitted,

**/s/ Joseph F. Murray**
Joseph F. Murray, Trial Attorney (0070654)
Jonathan P. Misny (0090673)
Murray Murphy Moul + Basil LLP
1114 Dublin Road
Columbus, OH  43215
Telephone: 614.488.0400
Facsimile: 614.488.0401
E-mail:  murray@mmmb.com
            misny@mmmb.com
*Counsel for Plaintiff*