**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO**

| | | |
|---|---|---|
| LOWER, LLC, | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | |
| v. | ) | **Case No. 2:26-cv-00319** |
| | ) | |
| ATLANTIC COAST MORTGAGE, LLC, | ) | **ORAL ARGUMENT REQUESTED** |
| | ) | |
| *Defendant.* | ) | |
| | ) | |

**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT (ECF NO. 1)**

NOW COMES Defendant Atlantic Coast Mortgage, LLC ("Defendant"), and hereby moves, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss the Complaint (ECF No. 1) (the "Complaint") filed by Plaintiff Lower, LLC ("Plaintiff") in its entirety.

In support of this Motion, Defendant states that all factual allegations in Plaintiff's Complaint, even when accepted as true, fail to state claims upon which relief may be granted. Moreover, some of Plaintiff's inadequately alleged claims are preempted by Ohio statute. The grounds for this Motion are more fully set forth in the Memorandum of Law filed herewith.

WHEREFORE, Defendant respectfully requests that this Court grant its Motion in full and dismiss Plaintiff's Complaint in its entirety.

Dated: April 16, 2026

Respectfully submitted,

**ATLANTIC COAST MORTGAGE, LLC**

By its attorneys,

*/s/ John F. Marsh*
John F. Marsh (Ohio Bar No. 0065345) – Trial Attorney
Bailey Cavalieri LLC
10 W. Broad Street, Ste. 2100
Columbus, OH 43215-3422
(614) 229-3230
jmarsh@baileycav.com

1

Donald W. Schroeder *(pro hac vice* forthcoming*)*
Massachusetts Bar No. 646700
Foley & Lardner LLP
111 Huntington Avenue
Boston, Massachusetts 02199
(617) 342-4000
dschroeder@foley.com

Carrie B. Hoffman *(pro hac vice* forthcoming*)*
Texas Bar No. 00787701
Foley & Lardner LLP
2021 McKinney Avenue, Suite 1600
Dallas, TX 75201
(214) 999-4262
choffman@foley.com

Jessica Glatzer Mason *(pro hac vice* forthcoming*)*
Texas Bar No. 00787701
Foley & Lardner LLP
1000 Louisiana Street, Suite 2000
Houston, TX 77002
(713) 276-5500
jmason@foley.com

Rachel Powitzky Steely *(pro hac vice* forthcoming*)*
Texas Bar No. 00792770
Foley & Lardner LLP
1000 Louisiana Street, Suite 2000
Houston, TX 77002
(713) 267-5500
rsteely@foley.com

2

## CERTIFICATE OF SERVICE

I hereby certify that on April 16, 2026, I caused the foregoing document to be electronically filed with the Clerk of Court using the CM/ECF system, effecting service upon the following:

Joseph F. Murray
Jonathan P. Misny
Murray Murphy Moul + Basil LLP
114 Dublin Road
Columbus, OH 43215
murray@mmmb.com
misny@mmmb.com

/s/ John F. Marsh
John F. Marsh (Ohio Bar No. 0065345) – Trial Attorney

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO**

| | | |
|---|---|---|
| LOWER, LLC, | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | |
| v. | ) | **Case No. 2:26-cv-00319** |
| | ) | |
| ATLANTIC COAST MORTGAGE, LLC, | ) | **ORAL ARGUMENT REQUESTED** |
| | ) | |
| *Defendant*. | ) | |
| | ) | |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO
DISMISS PLAINTIFF'S COMPLAINT (ECF NO. 1)**

**TABLE OF AUTHORITIES**

**Cases**

*Allied Erecting & Dismantling Co. v. Genesis Equip. & Mfg.*, 649 F. Supp. 2d 702 (N.D. Ohio 2009) ................................................................................................................................ 15

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................... 3, 4, 6, 8

*Auto Recyclers of Middletown, Inc. v. Stein, LLC*, 263 N.E.3d 1070 (Ct. App. Ohio 2025).......... 6

*Babcock & Wilcox Solar Holdings, LLC v. Jackson*, No. 5:24-cv-00910, 2025 WL 2996739 (N.D. Ohio Oct. 24, 2025) ........................................................................................ 9, 10

*Baseball at Trotwood, LLC v. Dayton Pro. Baseball Club*, No. C-3-98-260, 2003 WL 25566103 (S.D. Ohio Sept. 2, 2003)..................................................................................... 5, 8

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................... 4

*Bonner v. Delp,* 180 N.E.3d 11 (Ohio Ct. App. 2021).................................................... 18

*Brookeside Ambulance, Inc. v. Walker Ambulance Serv.*, 678 N.E.2d 248 (Ohio Ct. App. 1996) 4, 5

*Couzens v. Union Bank & Trust Co.*, 234 N.E.3d 661 (Ohio Ct. App. 2024) ................................ 6

*Cunningham v. Cleveland Police Dep't*, No. 1:10-CV-453, 2010 WL 5636778 (N.D. Ohio Dec. 22, 2010) ......................................................................................................... 15

*Easterling v. Sessions*, No. 3:17-cv-328, 2018 WL 4558411 (S.D. Ohio Sept. 21, 2018) ............. 4

*Estate of Cowling v. Estate of Cowling,* 847 N.E.2d 405 (Ohio 2006) ....................................... 20

*Ferguson v. Owens*, 459 N.E.2d 1293 (Ohio 1984)....................................................... 18

*Figgie v. Figgie*, No. 109829, 2021 WL 1309775 (Ct. App. Ohio Apr. 8, 2021) ....................... 18

*Findlay Recovery Ctr. LLC v. Thomas*, No. 3:24-cv-00940, 2025 WL 1218037 (N.D. Ohio Mar. 31, 2025) ..................................................................................................... 12, 13

*Franklin Tractor Sales v. New Holland N. Am., Inc.,* 106 F. App'x 342 (6th Cir. 2004) .............. 4

*Fred Siegel Co., L.P.A. v. Arter & Hadden*, 707 N.E.2d 853 (Ohio 1999) .................................. 6

*Ginn v. Stonecreek Dental Care*, 30 N.E.3d 1034 (Ohio Ct. App. 2015)............................... 5, 7, 8

*Gosden v. Louis*, 687 N.E.2d 481 (Ct. App. Ohio 1996)............................................... 14

*Hanneman Fam. Funeral Home & Crematorium v. Orians*, 235 N.E.3d 361 (Ohio 2023)......... 15

*Health Care Facilities, Partners, LLC v. Diamond*, No. 5:21-cv-10707, 2022 WL 16923888 (N.D. Ohio Nov. 14, 2022) ................................................................................................ 10

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 684 F. Supp. 2d 942 (N.D. Ohio 2009) ......................................................................................................................... 19

*IUVO Logistics, LLC v. Jones*, No. 3:23-CV-00205, 2023 WL 7186226 (S.D. Ohio Nov. 1, 2023) ................................................................................................................................. 16

*James B. Oswald Co. v. Neate*, 98 F.4th 666 (6th Cir. 2024) ...................................................... 11

*Jammal v. Am. Fam. Ins.*, No. 1:13 CV 437, 2013 WL 4049673 (N.D. Ohio Aug. 9, 2013) ...... 15

*Just Funky, LLC v. Boom Trendz, LLC*, No. 5:21-CV-1127, 2021 WL 2635377 (N.D. Ohio June 25, 2021) ............................................................................................................................. 9

*Miami Valley Mobile Health Servs. v. ExamOne Worldwide, Inc.*, 852 F. Supp. 2d 925 (S.D. Ohio 2012) ................................................................................................................... 15, 16

*Midland Am. Sales-Weintraub, Inc. v. Osram Sylvania, Inc.*, 874 F. Supp. 164, 168 (N.D. Ohio 1995) .................................................................................................................................. 6, 7

*MPW Indus. Servs., Inc. v. Pollution Control Servs., Inc.*, No. 2:02-CV-955, 2006 WL 640438 (S.D. Ohio Mar. 9, 2006) ....................................................................................................... 19

*Multilink Inc. v. Pignolet*, 774 F. Supp. 3d 905 (N.D. Ohio 2024) ............................................. 13

*Murray Energy Holdings Co. v. Mergermarket USA, Inc.*, No. 2:15-CV-2844, 2016 WL 3365422 (S.D. Ohio June 17, 2016) ............................................................................................... 12, 17

*Noco Co. v. CTEK, Inc.*, No. 1:19 CV 00853, 2020 WL 821485 (N.D. Ohio Feb. 18, 2020) 11, 12

*Novus Grp., LLC v. Prudential Fin., Inc.*, No. 2:19-CV-208, 2019 WL 4452708 (S.D. Ohio Sept. 17, 2019) ............................................................................................................................. 11

*Paulus v. Beck Energy Corp.*, 94 N.E.3d 73 (Ohio Ct. App. 2017) ............................................. 19

*Presidio, Inc. v. People Driven Tech., Inc.*, 686 F.Supp.3d 652 (S.D. Ohio 2023) ......................... 9

*Province v. Cleveland Press Pub. Co.*, 787 F.2d 1047 (6th Cir. 1986) ......................................... 7

*R.J. Heating Co., Inc. v. Rust*, No. 1:22-cv-00710, 2024 WL 1307114 (N.D. Ohio Mar. 27, 2024) ................................................................................................................................. 13

*RFC Capital Corp. v. EarthLink, Inc.*, No. 03AP-735, 2004 WL 2980402 (Ohio Ct. App. Dec. 23, 2004) ............................................................................................................................. 5

*Ridge Corp. v. Altum LLC*, No. 2:21-CV-5915, 2023 WL 1765918 (S.D. Ohio Feb. 3, 2023) 9, 16

iii

*Sal's Heating & Cooling Inc. v. BERS Acquisition Co., LLC*, 192 N.E.3d 537 (Ct. App. Ohio 2022) .......................................................................................................... 14

*Smith v. Ameriflora 1992, Inc.*, 644 N.E.2d 1038 (Ohio Ct. App. 1994) ....................................... 6

*Stewart v. Martin*, No. 3:21-cv-89, 2023 WL 2401720 (S.D. Ohio Mar. 8, 2023) .......... 17, 18, 20

*Stolle Mach. Co., LLC v. RAM Precision Indus.*, 605 F. App'x. 473 (6th Cir. 2015) .................. 17

*Three-C Body Shops, Inc. v. Nationwide Mut. Fire Ins. Co.*, 81 N.E.3d 499 (Ohio Ct. App. 2017) ........................................................................................................................................ 19

*Wick v. Ach*, 139 N.E.3d 480 (Ohio Ct. App. 2019) ...................................................................... 19

*Wilkey v. Hull*, 366 F. App'x 634 (6th Cir. 2010) .......................................................................... 8

*Williams v. Aetna Fin. Co.*, 700 N.E.2d 859 (Ohio 1998) ............................................................ 14

*Woodward Const., Inc. v. For 1031 Summit Woods, L.L.C.*, 30 N.E.3d 237 (Ct. App. Ohio 2015) ........................................................................................................................................ 14

*Zillich v. Zillich*, No. 1:18 CV 540, 2019 WL 1385986 (N.D. Ohio Mar. 14, 2019) ................... 20

**Statutes**

18 U.S.C. § 1836, *et seq*...…………………………………………………………………...8, 9, 10, 13

Ohio Rev. Code § 1333.61, *et seq*...……………………………………………………………8, 11, 15

## I.      INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Atlantic Coast Mortgage, LLC ("ACM") respectfully submits this memorandum of law in support of its Motion to Dismiss Plaintiff Lower, LLC's ("Lower") Complaint (the "Complaint") (ECF No. 1). Without any basis to claim that ACM acted improperly, Lower initiated this lawsuit, vaguely alleging that ACM tortiously interfered with Lower's "existing" and "prospective" business relationships (Counts I and II), misappropriated purported "trade secrets" (Counts III and IV), engaged in civil conspiracy (Count V), and that ACM should be subject to a constructive trust (Count VI). Lower's conclusory allegations—premised almost entirely on "information and belief"—fail to state a plausible claim as to **any** of its six causes of action. Additionally, Counts II and V are preempted by Ohio statute.

The Complaint's complete reliance on non-specific, conclusory "facts" reflects a fundamental reality: ACM did not engage in wrongdoing and, therefore, the facts necessary to support Lower's claims do not exist. Lower's frustration over the departure of some of its employees to a competitor does not entitle Lower to manufacture legal claims against ACM when no such claims exist. For these reasons, the Court should dismiss Lower's Complaint in full.

## II.      STATEMENT OF FACTS[1]

### A.      Parties, Jurisdiction, and Venue

Lower is a mortgage lender with its principal place of business in Columbia, Maryland. Compl., ECF No. 1 at PageID 1–2, ¶¶ 2, 7. Lower maintains an office in Columbus, Ohio. *Id.* at PageID 1, ¶ 2. ACM also operates in the mortgage lending industry. *Id.* at PageID 2, ¶ 8. ACM's principal place of business is in Fairfax, Virginia. *Id.* at PageID 2, ¶ 3. This dispute arises from alleged conduct that Lower contends took place in Ohio, specifically within the Southern District

---

[1] Solely for the purposes of this Motion, ACM assumes the truth of Lower's factual allegations (but not mere conclusions), as required under the Federal Rules of Civil Procedure.

of Ohio. *Id.* at PageID 2, ¶¶ 5–6.

### B.      Lower's Allegations

On February 9, 2026, a group of employees (including Nicholas Gallagher ("Gallagher"))

resigned from Lower. *Id.* at PageID 2–3, ¶¶ 9, 17. The group of employees began working at ACM

shortly thereafter. *Id.* at PageID 2, ¶ 10. The majority of the allegations in Lower's Complaint

pertain to the alleged actions of Gallagher and the unnamed group of former Lower employees.

*See generally* Compl., ECF No. 1. With respect to Gallagher and other former Lower employees,

Lower alleges, among other things, that:

- Gallagher and other former employees had covenants not to compete with Lower and agreements to keep confidential Lower's confidential and proprietary information. *Id.* at PageID 3, ¶¶ 15–16.
- Upon information and belief, Gallagher "orchestrated" an "effort to move . . . Lower employees to ACM and to take Lower customers with them[.]" *Id.*, Page ID 3, ¶ 17.
- Upon information and belief, Gallagher and others obtained information from Lower prior to the end of their employment (which Lower submits is a trade secret) and used it to solicit customers to transfer their business to ACM. *Id.* at PageID 4, ¶ 18.

None of the above allegations assert wrongdoing by ACM. Instead, with respect to ACM's

conduct specifically, Lower asserts only the following conclusory allegations:

- Upon information and belief, that ACM "coordinated" with Gallagher and other former Lower employees to "systematically raid [Lower's] workforce and siphon its customers" or "targeted certain Lower employees at Gallagher's and/or other former Lower employees' direction." *Id.* at PageID 1, 3–4, ¶¶ 1, 13, 22.
- ACM "worked with" Gallagher and/or other former Lower employees "to raid Lower's workforce and take Lower's pre-existing customers to ACM." *Id.* at PageID 4, ¶ 19.
- ACM "continues to target and recruit" Lower employees "at Gallagher's and/or other former Lower employees' direction." *Id.* at PageID 5, ¶ 25.
- ACM "encouraged or knowingly permitted former Lower employees to use Lower's . . . information . . . to solicit Lower's customers[.]" *Id.* at PageID 7, ¶ 41.
- ACM "received and possesses" information that Lower concludes is a "trade secret." *Id.* at PageID 8–9, ¶¶ 50, 58.

2

These bare assertions, unsupported by specific facts or concrete examples, fall far short of the pleading standards required to survive dismissal. The deficiencies in Lower's pleading are not mere technical shortcomings that could be remedied through amendment; rather, they reveal a fundamental inability to articulate any viable claim. Lower's averments in support of its federal and state trade secret claims fare no better, amounting to nothing more than a collection of legal conclusions dressed up as factual allegations. Lower cobbles together the following:

- Upon information and belief, that Gallagher and other former employees obtained "confidential information regarding Lower's loan pipeline, including the identities and contact information of borrowers whose loan applications were pending with Lower, as well as referral partners and prospective borrowers who had expressed interest in obtaining mortgage loan services from Lower." *Id.* at PageID 4, ¶ 18.
- That ACM "received and possesses" Lower's "internal personnel information and non-public customer information." *Id.* at PageID 8, ¶¶ 47, 50.
- That ACM "received and possesses" information regarding Lower's "loans in process leads, employment practices, and nonpublic borrower, financial, and personal information." *Id.* at PageID 9, ¶¶ 54, 58.
- That Lower "derives independent economic value" from the information referenced in the previous two bullet points, that the information is "not known to the general public, is not readily ascertainable by proper means by persons or entities who can derive economic value from its disclosure or use," that Lower "developed" the information for its exclusive benefit, and that Lower "has taken reasonable and appropriate measures to maintain the secrecy of [the] information by limiting access to said information and maintaining policies and practices designed to preserve the confidential nature of such information." *Id.* at PageID 8–9, ¶¶ 47–48, 55–56.

As demonstrated below, this generic boilerplate cannot sustain Lower's claims.

## III.    STANDARD OF REVIEW

Dismissal is proper under Fed. R. Civ. P. 12(b)(6) when a complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible

3

when it includes "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* If a plaintiff fails to "nudge[] [its] claims across the line from conceivable to plausible, [the] complaint **must** be dismissed." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007) (emphasis added). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. To this end, a complaint must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" in order to survive a motion to dismiss. *Twombly*, 550 U.S. at 555. When ruling on a motion to dismiss, "the Court must construe the Complaint in the light most favorable to the non-moving party, accepting as true all of plaintiff's factual allegations." *Easterling v. Sessions*, No. 3:17-cv-328, 2018 WL 4558411, at *2 (S.D. Ohio Sept. 21, 2018). However, the Court is not bound to "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555.

Here, Lower's threadbare allegations utterly fail to meet these settled standards.

## IV.     ARGUMENT

### A.     Lower's Tortious Interference Claims (Counts I and II) Must Be Dismissed.

"The torts of interference with business relationships and contract rights generally occur when a person, without a privilege to do so, induces or otherwise causes a third person not to enter into or continue a business relation with another, or not to perform a contract with another." *Franklin Tractor Sales v. New Holland N. Am., Inc.,* 106 F. App'x 342, 344 (6th Cir. 2004) (quoting *A & B–Abell Elevator Co., Inc. v. Columbus/Central Ohio Bldg. & Constr. Trades Council*, 651 N.E.2d 1283, 1294 (Ohio 1995)). Tortious interference claims come in two varieties: (1) tortious interference with contract rights; and (2) tortious interference with business relationships. *Brookeside Ambulance, Inc. v. Walker Ambulance Serv.*, 678 N.E.2d 248, 252 (Ohio Ct. App. 1996). While Ohio law recognizes both torts, Lower does not clearly plead either. *See id.*

4

1. Count I: Lower Does Not Plausibly Allege Tortious Interference With Respect to Lower's Former Employees.

Lower's vague allegations in Count I make it difficult to discern whether it intends to assert a claim for tortious interference with contract rights, or tortious interference with business relationships. Compl., ECF No. 1 at PageID 5–6, ¶¶ 29–35. Either way, Lower fails to plead a cognizable claim in connection with its relationship (contractual or otherwise) with former Lower employees. Tortious interference requires proof of: (1) a business relationship or contract; (2) the defendant's knowledge of the relationship or contract; (3) the defendant's intentional and improper action taken to prevent a contract formation, procure a contractual breach, or terminate a business relationship; (4) a lack of privilege or justification; and (5) resulting damages. *Brookeside Ambulance, Inc.*, 678 N.E.2d at 252; *see also Baseball at Trotwood, LLC v. Dayton Pro. Baseball Club*, No. C-3-98-260, 2003 WL 25566103, at *5 (S.D. Ohio Sept. 2, 2003). Critically, "[o]nly *improper* interference is actionable." *Baseball at Trotwood, LLC*, 2003 WL 25566103, at *5 (emphasis in original). Because Lower cannot allege either the third prong (intentional interference) or the fourth prong (lack of justification)—each an independently fatal deficiency—Count I must be dismissed.

To establish intentional interference, a plaintiff must either: (1) prove that the defendant acted with the purpose or desire to interfere with the performance of the contract or business relationship; or (2) prove that the defendant knew that interference was certain or substantially certain to occur as a result of its actions. *RFC Capital Corp. v. EarthLink, Inc.*, No. 03AP-735, 2004 WL 2980402, at *17 (Ohio Ct. App. Dec. 23, 2004) (citing Restatement of Law 2d, Torts (1977), Section 766, Comment j); *Ginn v. Stonecreek Dental Care*, 30 N.E.3d 1034, 1041 (Ohio Ct. App. 2015)*.* Lower concludes that ACM "targeted" certain employees and "intentionally participated" with former Lower employees "in procuring breaches of their employment

5

agreements." Compl., ECF No. 1 at PageID 4, 6, ¶¶ 22, 32. However, Lower does not plead a single fact suggestive of ACM's "participation" or involvement with such purported "targeting." *See generally* Compl., ECF No. 1. Lower's conclusory assertions, unsupported by specific facts, are entitled to no weight at the motion to dismiss phase. *See Iqbal*, 556 U.S. at 678. Without specific allegations as to ACM's conduct, Lower does nothing more than speculate that ACM acted with the **purpose** of causing a breach or termination of relationship. *Smith v. Ameriflora 1992, Inc.*, 644 N.E.2d 1038, 1044 (Ohio Ct. App. 1994) ("A tortious interference action . . . requires a showing that [the defendant's] actions induced or caused a third party to discontinue a business relationship with [the plaintiff]").

Even assuming that Lower plausibly alleged intentional interference (something ACM disputes), the Complaint also fails to establish the "lack of justification" element. To satisfy this element, a plaintiff must prove that defendant's interference was "improper." *Fred Siegel Co., L.P.A. v. Arter & Hadden,* 707 N.E.2d 853, 858 (Ohio 1999).[2] Simply put, the Complaint is devoid of any facts that, if true, establish that ACM's purported conduct was improper. *See generally* Compl., ECF No. 1. The Complaint merely alleges that ACM "knew or should have known Gallagher and other Lower employees made covenants with Lower"[3] and that ACM "intentionally attempted to compete with Lower[.]" Compl., ECF No. 1 at PageID 6, ¶ 32; *see Midland Am. Sales-Weintraub, Inc. v. Osram Sylvania, Inc.*, 874 F. Supp. 164, 168 (N.D. Ohio 1995) (holding

---

[2] In assessing whether conduct was improper, Ohio courts consider: (a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference, and (g) the relations between the parties. *Fred Siegel Co.,* 707 N.E.2d at 860; *see also Couzens v. Union Bank & Trust Co.*, 234 N.E.3d 661, 665 (Ohio Ct. App. 2024). Lower's threadbare allegations do not allow the Court to make any assessment under this framework.

[3] "[C]onstructive knowledge is not sufficient to sustain a cause of action for tortious interference; actual knowledge is required." *Auto Recyclers of Middletown, Inc. v. Stein, LLC*, 263 N.E.3d 1070, 1082 (Ct. App. Ohio 2025).

6

plaintiff could not maintain a tortious interference claim where defendant's alleged misconduct was redirecting business to plaintiff's former employee, even with knowledge that the employee was bound by a restrictive covenant). Under Ohio law, "mere knowledge of the plaintiff's contract with the third-party and a decision to contract with the third-party in the face of that knowledge is insufficient to establish the tort of business interference." *Id.* at 167; *see also Province v. Cleveland Press Pub. Co.*, 787 F.2d 1047, 1056 (6th Cir. 1986) ("the tort [of tortious interference with a contract] is not to be 'inferred from the mere fact that a third party enters into a contract with one of two existing contracting parties with knowledge' of the existing contract.") (internal citations omitted). It is not unlawful for ACM to compete against Lower. In the context of this legally permissible competitive landscape, Lower's threadbare assertions are insufficient to support a reasonable inference that ACM's conduct (which, again, Lower fails to specifically identify) was somehow "improper" or "unjustified." Accordingly, Count I must be dismissed.[4]

> 2. <u>Count II: Lower's Tortious Interference With Prospective Business Relationships Claim Must Be Dismissed.</u>

In Count II, Lower alleges that ACM "caused the termination of its relationship with its employees and customers" and "intentionally and improperly interfered" with "numerous individuals whose mortgage loan applications were pending with Lower or who were in the process of obtaining mortgage lending services from Lower." Compl., ECF No. 1 at PageID 6–7, ¶¶ 34, 38, 40. Like Count I, Count II contains nothing more than conclusory allegations.

Indeed, the Complaint does not identify a single person or entity with whom Lower had an

---

[4] Amidst the allegations that Lower asserts in connection with Count I are two unexplained insinuations that ACM interfered with Lower's business relationship with "customers." Compl., ECF No. 1 at PageID 6, ¶¶ 34, 35. Lower does not (a) identify what specific "customers" it is referring to, (b) identify what "relationships" with these unknown "customers" are at issue, or (c) provide facts explaining how ACM "interfered" with these supposed "relationships." These allegations are woefully inadequate to establish a tortious interference with business relationships claim as to any "customer" of Lower. *Ginn,* 30 N.E.3d at 1040 (affirming directed verdict where plaintiff failed to identify any person with whom he had a business relationship).

existing or prospective business relationship, much less plead facts showing that ACM intentionally and improperly interfered with any such relationship. *See Wilkey v. Hull*, 366 F. App'x 634, 638 (6th Cir. 2010) (affirming dismissal of a tortious interference with business relationship claim where the complaint merely alleged "interference" without facts showing any third-party individuals ended a relationship because of the defendant's actions); *see also Ginn,* 30 N.E.3d at 1040 (Ohio Ct. App. 2015) (affirming directed verdict where plaintiff could not identify any person with whom he had a business or prospective contractual relationship and with whom the defendant allegedly interfered). Absent factual allegations that ACM intentionally caused identifiable customers or applicants to take their business elsewhere, Lower's claim is a non-starter. Given that it has already been several months since ACM's hire of Gallagher, if there were such evidence, Lower would have included such allegations in its Complaint.

Setting aside this hurdle, the Complaint also lacks facts showing that ACM acted without justification or that any alleged interference was improper. *Baseball at Trotwood*, 2003 WL 25566103, at *5. The most Lower offers is a singular statement that "ACM intentionally and improperly interfered with these prospective relationships by coordinating with Gallagher and other former Lower employees to solicit Lower's customers and prospective borrowers." Compl., ECF No. 1 at PageID 7, ¶ 40. That is a legal conclusion, not a well-pleaded fact, and it does not permit a reasonable inference of liability. *Iqbal*, 556 U.S. at 678. Without allegations describing what ACM actually did, why its conduct was unjustified, and what made the purported interference improper, Lower cannot plausibly maintain its claim. Because Lower fails to plead facts showing either intentional interference or a lack of justification, Count II should be dismissed.

**B.     Lower's Misappropriation of Trade Secrets Claims (Counts III and IV) Cannot Stand.**

To establish a claim for misappropriation of trade secrets under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, *et seq.* or the Ohio Uniform Trade Secrets Act ("OUTSA"), Ohio Rev. Code § 1333.61, *et seq.*, a plaintiff must demonstrate: (1) the existence of a protectable trade secret; and (2) misappropriation of the trade secret. *Presidio, Inc. v. People Driven Tech., Inc.*, 686 F.Supp.3d 652, 683 (S.D. Ohio 2023).[5] Counts III and IV must be dismissed because Lower fails to identify an actual trade secret. Count III (DTSA) should also be dismissed on the independent basis that Lower fails to plausibly allege that the purported trade secret at issue was used in, or intended for use in, interstate or foreign commerce. 18 U.S.C. § 1836(b)(1).

1.   Lower Fails to Identify A Protectable Trade Secret.

"[C]ourts routinely dismiss misappropriation of trade secret claims under Rule 12(b)(6) when the complaint 'consists virtually entirely of legal conclusions couched as . . . factual allegation[s].'" *Babcock & Wilcox Solar Holdings, LLC v. Jackson*, No. 5:24-cv-00910, 2025 WL 2996739, at *3 (N.D. Ohio Oct. 24, 2025) (quoting *Murray Energy Holdings Co. v. Bloomberg, L.P.,* No. 2:15-CV-2845, 2016 WL 3355456, at *7–8 (S.D. Ohio June 17, 2016)). As an initial matter, Lower fails to identify which specific information it claims is a "trade secret."

> A trade secret claimant must describe the secret with sufficient specificity so the court can assess its protectability and understand that its compilation is unique. . . . Courts dismiss complaints that allege general categories of confidential information without providing details to define the trade secrets because those allegations fail to put defendants on notice of what information they allegedly misappropriated and preclude the court from determining if the information could be a protectable trade secret.

---

[5] The OUTSA breaks the second element out into two parts: (a) acquisition of the trade secret as the result of a confidential relationship or through improper means; and (b) an unauthorized use of a trade secret. Courts have consistently recognized that the elements of a DTSA and OUTSA claim are "substantially the same" and thus, the claims are often analyzed together. *See, e.g.*, *Just Funky, LLC v. Boom Trendz, LLC*, No. 5:21-CV-1127, 2021 WL 2635377, at *6 (N.D. Ohio June 25, 2021).; *Ridge Corp. v. Altum LLC*, No. 2:21-CV-5915, 2023 WL 1765918, at *2 (S.D. Ohio Feb. 3, 2023) ("Because the [DTSA and OUTSA] are similar in scope and contain nearly identical definitions of statutory terms, the [misappropriation of trade secret] claims will be addressed together.").

*Babcock & Wilcox Solar*, 2025 WL 2996739, at *5.

In the context of its trade secret claims, Lower vaguely refers to the following general categories of information: "internal personnel information," "non-public customer information," and information regarding "loans in process, leads, employment practices, and nonpublic borrower, financial, and personal information." Compl., ECF No. 1 at PageID 8–9, ¶ 47, 54. These broad categories encapsulate a wide variety of possible information, little, if any, of which may be plausibly entitled to trade secret protection. "Information alleged to be a misappropriated trade secret must be identified with enough specificity to place a defendant on notice of the bases for the claim being made against it." *Health Care Facilities, Partners, LLC v. Diamond*, No. 5:21-cv-10707, 2022 WL 16923888 at *5 (N.D. Ohio Nov. 14, 2022) (quoting *Oakwood Lab's LLC v. Thanoo*, 999 F.3d 892, 905 (3d Cir. 2021)). That is, a trade secret "must be described with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies." *Id.* (quoting *Oakwood Lab's LLC*, 999 F.3d at 905).

Lower does not provide details to define these purported "trade secrets" and fails to put ACM on notice of what it allegedly "misappropriated." There is no basis on which ACM can discern what, if any, information within these categories may be subject to trade secret protection, or to even understand to what Lower is referring. Counts III and IV should be dismissed on this basis alone. *Babcock & Wilcox Solar*, 2025 WL 2996739, at *5–6 (dismissing DTSA and OUTSA trade secret claims where plaintiff failed to specifically identify what information was allegedly "trade secret").

Moreover, Lower fails to identify how this vague list of three categories of information

10

qualifies as a "trade secret." To establish the existence of a trade secret under either the DTSA or the OUTSA, a plaintiff must show that the information at issue has "independent economic value" and that the plaintiff took "reasonable steps to keep [the information] a secret." *James B. Oswald Co. v. Neate*, 98 F.4th 666, 675 (6th Cir. 2024).[6] When analyzing DTSA and OUTSA claims simultaneously, Courts in the Sixth Circuit utilize the following six factors when determining whether information constitutes a trade secret:

> (1) The extent to which the information is known outside the business; (2) the extent to which it is known to those inside the business, i.e., by the employees; (3) the precautions taken by the holder of the trade secret to guard the secrecy of the information; (4) the savings effected and the value to the holder in having the information as against competitors; (5) the amount of effort or money expended in obtaining and developing the information; and (6) the amount of time and expense it would take for others to acquire and duplicate the information.

*Noco Co. v. CTEK, Inc.*, No. 1:19 CV 00853, 2020 WL 821485, at *7 (N.D. Ohio Feb. 18, 2020) (quoting *State ex rel. Plain Dealer v. Ohio Dep't of Ins.*, 687 N.E. 2d 661, 672 (Ohio 1997)). "[C]onclusory statements as to trade secret factors without supporting factual evidence are insufficient to meet the burden of establishing trade secret status." *Novus Grp., LLC v. Prudential Fin., Inc.*, No. 2:19-CV-208, 2019 WL 4452708, at *4 (S.D. Ohio Sept. 17, 2019). Lower fails to plead facts that, if true, establish that the information it refers to has independent economic value or that Lower took reasonable steps to keep that information a secret. Instead, Lower merely recites the elements of the applicable trade secret statutes. *See* Compl., ECF No. 1 at PageID 8–9, ¶¶ 48, 56.

---

[6] *See* 18 U.S.C. § 1839(3) (stating that a trade secret is information: (1) that "the owner thereof has taken reasonable measures to keep such information secret" and (2) that "derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information"); Ohio Rev. Code § 1333.61(D) (trade secret is information that both (1) "derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use" and (2) "is the subject of efforts that are reasonable under the circumstances to maintain its secrecy").

11

*i. Lower Cannot Demonstrate Independent Economic Value.*

With respect to economic value, Lower generally claims that it "developed" the amorphous body of information it claims is a trade secret for its "exclusive benefit" and that Lower "derives independent economic value" from it. *Id.* at PageID 8–9, ¶ 48, 55–56. Lower provides no details to indicate what economic value it derives from the information, what resources or costs were expended to "develop" the information, or the amount of time and expense it would take for others to acquire and duplicate the information. In other words, Lower fails to plead information sufficient to conclude that the information it claims is a trade secret holds independent economic value. *See Noco Co.*, 2020 WL 821485, at *8. Counts III and IV should be dismissed on this basis. *See, e.g.*, *Murray Energy Holdings Co. v. Mergermarket USA, Inc.*, No. 2:15-CV-2844, 2016 WL 3365422, at *5 (S.D. Ohio June 17, 2016) (dismissing a trade secret claim for failure to provide any factual specificity regarding the economic value of "confidential and proprietary business information").

*ii. Lower Provides No Evidence of Steps to Maintain Secrecy.*

On its steps to preserve confidentiality, Lower merely states that it "limit[ed] access to said information and maintain[ed] policies and practices designed to preserve the confidential nature of such information." Compl., ECF No. 1 at PageID 8–9, ¶¶ 48, 56; *Findlay Recovery Ctr. LLC v. Thomas*, No. 3:24-cv-00940, 2025 WL 1218037, at *8 (N.D. Ohio Mar. 31, 2025) (holding plaintiff failed to plausibly plead that it took reasonable measures to protect its trade secrets where the complaint alleged no internal access controls or specific safeguards to maintain the information's secrecy). Lower directly contradicts this statement by alleging in the same breath that former employees who joined ACM—who Lower contends "held positions at all different levels, from junior employees . . . to senior executive positions"—had access to this information.

12

Compl., ECF No. 1 at PageID 2, 8–9, ¶¶ 11, 47, 57; *see Multilink Inc. v. Pignolet*, 774 F. Supp. 3d 905, 916 (N.D. Ohio 2024) (dismissing trade secret claim where plaintiff failed to plead "sufficient facts to show that the information is not readily available to employees within the company"). Lower provides no other allegations relevant to the purported secrecy of the at-issue information.[7] "[A]llegations [that] are either conclusory because they merely recite factors and elements that are necessary to establish the existence of a trade secret, [and those that] are unsupported by any other alleged fact within the Complaint" are insufficient to maintain a trade secret claim in the face of a motion to dismiss. *Multilink Inc.*, 774 F. Supp. 3d at 917. Consequently, Counts III and IV should be dismissed.

2. <u>Count III Also Fails Because Lower Does Not Allege Use In Interstate Commerce.</u>

The DTSA applies only to trade secrets that relate "to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1). Lower's Complaint is silent on whether the information it maintains is a "trade secret" is used in, or intended for use in, interstate or foreign commerce. Because Lower neglects to address this critical statutory requirement altogether, the Court should dismiss Count III on this basis as well. *See, e.g.*, *R.J. Heating Co., Inc. v. Rust*, No. 1:22-cv-00710, 2024 WL 1307114, at *4–5 (N.D. Ohio Mar. 27, 2024) (dismissing plaintiff's trade secret claim where plaintiff failed to adequately plead elements of DTSA claim, including interstate/foreign commerce nexus).

---

[7] That certain employees "agreed to keep confidential, and not disclose" confidential and proprietary information and "[a]ll employees acknowledged and agreed such information was in the nature of a trade secret," standing alone, does not mean that Lower took "reasonable measures" to protect its alleged trade secrets. Compl., ECF No. 1 at PageID, 3, ¶ 16; *see, e.g.*, *Findlay Recovery Ctr. LLC*, 2025 WL 1218037, at *7 (noting that in "a trade-secret dispute arising in the context of an employment relationship . . . the trade-secret claimant must allege more than a broadly worded confidentiality agreement to show that it has taken reasonable measures to protect its trade secrets. The claimant employer must also articulate how it further protects such information from unauthorized internal access, distribution, and disclosure.").

    **C.**    **Lower's Civil Conspiracy Claim (Count V) Must Be Dismissed.**

To state a claim for civil conspiracy under Ohio law, "the plaintiff must prove: (1) a malicious combination of two or more persons, (2) causing injury to another person or property, and (3) the existence of an unlawful act independent from the conspiracy itself." *Sal's Heating & Cooling Inc. v. BERS Acquisition Co., LLC*, 192 N.E.3d 537, 542 (Ct. App. Ohio 2022) (internal quotations omitted). "[A]n action for civil conspiracy cannot be maintained unless an underlying unlawful act is committed." *Id.* at 544. Lower's civil conspiracy claim fails because it does not plausibly plead a malicious combination.

To establish a "malicious combination" a plaintiff must show that two or more parties came "to a mutual understanding that they [would] accomplish the unlawful design." *Gosden v. Louis*, 687 N.E.2d 481, 496 (Ct. App. Ohio 1996); *see also Woodward Const., Inc. v. For 1031 Summit Woods, L.L.C.*, 30 N.E.3d 237, 243 (Ct. App. Ohio 2015) (quoting *Gosden*, 687 N.E.2d at 496) ("[T]o establish the malicious combination necessary for a civil conspiracy, [a plaintiff] must at least show 'a common understanding or design . . . to commit an unlawful act.'"). The malice required for civil conspiracy is a "state of mind under which a person does a wrongful act purposely, without a reasonable or lawful excuse, to the injury of another." *Williams v. Aetna Fin. Co.*, 700 N.E.2d 859, 868 (Ohio 1998). Lower provides a single conclusory allegation that ACM "conspired" with Gallagher and "potentially other former Lower employees" to commit alleged tortious acts. Compl., ECF No. 1 at PageID 9, ¶ 61.

Lower again fails to allege facts showing the existence of an agreement, mutual understanding, or shared plan between ACM and any non-employee, other entity, or party and does not allege facts from which the Court could infer that ACM purposefully committed an unlawful act. Simply invoking the word "conspire" does not satisfy the pleading requirements of

14

Fed. R. Civ. P. 12(b)(6). *Jammal v. Am. Fam. Ins.*, No. 1:13 CV 437, 2013 WL 4049673, at *1, n.2 (N.D. Ohio Aug. 9, 2013) (disregarding allegations at motion to dismiss stage that "make legal conclusions or unwarranted inferences, or that merely assign labels or recite elements of a claim"). Because Lower fails to plausibly plead this essential element, the Court should dismiss Count V of the Complaint. *See, e.g.*, *Cunningham v. Cleveland Police Dep't*, No. 1:10-CV-453, 2010 WL 5636778, at *7 (N.D. Ohio Dec. 22, 2010) (dismissing civil conspiracy claim where plaintiff "failed to present any facts from which the Court can reasonably infer that there was a conspiratorial relationship between the [individuals] involved" because said allegations were "entirely conclusory and unsubstantiated").

    **D.**    **Both Lower's Tortious Interference (Count II) and Civil Conspiracy (Count V) Claims Are Preempted By The OUTSA.**

The OUTSA creates a statutory claim for misappropriation of trade secrets that "displace[s] conflicting tort, restitutionary, and other laws of this state providing civil remedies for misappropriation of a trade secret." Ohio Rev. Code § 1333.67(A). Courts interpret the OUTSA preemption broadly, extending it to "all alternative causes of action for theft or misuse of confidential, proprietary, or otherwise secret information falling short of trade-secret status." *Miami Valley Mobile Health Servs. v. ExamOne Worldwide, Inc.*, 852 F. Supp. 2d 925, 940 (S.D. Ohio 2012) (quoting *Allied Erecting & Dismantling Co. v. Genesis Equip. & Mfg.*, 649 F. Supp. 2d 702, 720 (N.D. Ohio 2009)); *see generally Hanneman Fam. Funeral Home & Crematorium v. Orians*, 235 N.E.3d 361 (Ohio 2023) (holding the OUTSA preempted the plaintiff's tort claims). It is not necessary for the Court to determine whether the information in question constitutes a "trade secret" before considering whether the common law claims are preempted. *Allied Erecting & Dismantling Co.*, 649 F. Supp. 2d at 721–22. A tort claim is preempted by the OUTSA when the claims are "no more than a restatement of the same operative facts that formed the basis of the

15

plaintiff's statutory claims for trade secret misappropriation." *Ridge Corp.*, 2023 WL 1765918, at *6 (quoting *Stolle Mach. Co., LLC v. RAM Precision Indus.*, 605 F. App'x. 473, 485 (6th Cir. 2015)).

In addition to the reasons enumerated in Section IV(A)(2), *supra*, Count II should also be dismissed because it is preempted by the OUTSA. Here, Lower's tortious interference with prospective business relationships claim rests on the alleged acquisition and use of Lower's confidential and proprietary information to solicit its customers. Lower alleges that ACM "encouraged or knowingly permitted former Lower employees to use Lower's confidential and proprietary information—including non-public customer information and loan pipeline data—to solicit Lower's customers and persuade them to move their potential mortgage business from Lower to ACM." Compl., ECF No. 1 at PageID 7, ¶ 41. Lower's OUTSA claim (Count IV) is premised on the **same** alleged conduct: misappropriation and use of that same proprietary and confidential information. *Id.* at PageID 9, at ¶¶ 54–59. *See Miami Valley Mobile Health Servs*, 852 F. Supp. 2d at 941 (holding that a tort claim premised entirely on the same operative facts as an OUTSA claim—namely that defendant wrongfully took "the names, addresses, or phone numbers of the Plaintiffs' business contacts"—is preempted by the OUTSA and dismissing the same with prejudice). In other words, Count II and Count IV both arise out of the same set of alleged operative facts; as such, there is no independent factual basis for Lower's tortious interference claim distinct from the alleged misappropriation of trade secrets claim. *See IUVO Logistics, LLC v. Jones*, No. 3:23-CV-00205, 2023 WL 7186226, at *3 (S.D. Ohio Nov. 1, 2023) (holding that plaintiff's tort claim was preempted where plaintiff alleged that defendant "used the trade secrets misappropriated from [plaintiff] to induce current and potential customers of [plaintiff] to breach their contractual duties to [plaintiff], and/or to discontinue a business relationship with [plaintiff]"). Accordingly,

the Court should dismiss Count II on this basis as well.

Count V (Civil Conspiracy) suffers from the same infirmity and must share the same fate. This is because, as noted below, the OUTSA preempts other claims—including those arising under Ohio law—which are predicated on the same underlying unlawful act used to establish the OUTSA claim, to wit:

> Even though proof of conspiracy requires proving additional facts—a malicious combination of two or more persons causing injury—beyond the underlying unlawful act, the conspiracy claim is dependent on proof of the underlying act— here, misappropriation of trade secrets. [The plaintiff's] conspiracy claim similarly restates the operative facts that would establish [the plaintiff's] claim for misappropriation of trade secrets.

*Murray Energy Holdings Co.*, 2016 WL 3365422, at *7; *Stolle Mach. Co.,* 605 F.App'x. at 486 (internal citation omitted).

Lower's civil conspiracy claim alleges that "[w]hile Gallagher was still employed at Lower . . . [he] provided ACM with Lower's proprietary and confidential information." Compl., ECF No. 1 at PageID 9–10, ¶ 62. The underlying unlawful act, as alleged in the Complaint, was the purported misappropriation of trade secrets. *Id.* Accordingly, "[b]y its very allegations, the civil conspiracy claim is specifically linked to the alleged theft of trade secrets and necessarily rises or falls based on whether the defendant is found to have misappropriated a trade secret." *Murray Energy Holdings Co.*, 2016 WL 3365422, at *7. Lower's civil conspiracy claim is predicated on the same operative facts as the trade secret misappropriation claim and, is therefore preempted by the OUTSA. The court should accordingly dismiss Count V on this basis as well.

### E. Lower's Constructive Trust Claim (Count VI) Must Be Dismissed.

#### 1. Constructive Trust Is A Remedy, Not A Cause of Action.

A "constructive trust" is a remedy, not an independent cause of action. *Stewart v. Martin*, No. 3:21-cv-89, 2023 WL 2401720, at *7 (S.D. Ohio Mar. 8, 2023); *see also Bonner v. Delp,* 180

17

N.E.3d 11, 31 (Ohio Ct. App. 2021). Because Lower improperly pleads a standalone "claim" for the imposition of a constructive trust, the Court should dismiss Count VI outright. *See Figgie v. Figgie*, No. 109829, 2021 WL 1309775, at \*13 (Ct. App. Ohio Apr. 8, 2021) (affirming dismissal of constructive trust claim and noting that "dismissal . . . is warranted where remedies claimed are not independent causes of action").

    2.   <u>Lower Does Not Plead a Sufficient Basis For Constructive Trust as a Remedy</u>

In certain limited circumstances, a court may impose a constructive trust as an equitable remedy in connection with a viable unjust enrichment claim. *Ferguson v. Owens*, 459 N.E.2d 1293, 1295 (Ohio 1984). But Lower does not assert a claim for unjust enrichment. *See generally* Compl., ECF No. 1. Rather, Lower refers to unjust enrichment as a contingent, future possibility: "Unless ACM is ordered to disgorge these profits and the Court imposes a constructive trust over such funds, ACM *will be unjustly enriched* at Lower's expense." *Id.* at PageID 11, at ¶ 70 (emphasis added). A proper claim for unjust enrichment requires that a plaintiff establish: (1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment ('unjust enrichment'). *Stewart*, 2023 WL 2401720, at \*8 (quoting *Hambleton v. R.G. Barry Corp.*, 465 N.E.2d 1298, 1302 (Ohio 1984)).

Lower does not allege that it conferred a benefit upon ACM. Lower instead concludes that "ACM knowingly obtained and continues to obtain benefits derived from the wrongful conduct alleged in this Complaint." Compl., ECF No. 1 at PageID 10, ¶ 65. Lower further alleges ACM "obtained" revenues, commissions, and other profits derived from its unlawful conduct. *Id.* at PageID 10, ¶ 66. Alleging that a defendant "obtained" profits is not the same as alleging that the plaintiff "conferred" a benefit on the defendant. *See MPW Indus. Servs., Inc. v. Pollution Control*

*Servs., Inc.*, No. 2:02-CV-955, 2006 WL 640438, at *9 (S.D. Ohio Mar. 9, 2006) ("The word 'confer' means 'to bestow from or as if from a position of superiority' or 'to give.'"). The crux of Lower's case is that ACM "raided" (i.e., **took**) business from Lower—but this theory does not support an inference that Lower "bestowed" any benefit to ACM. *See* Compl., ECF No. 1 at PageID 3, ¶ 13.

Moreover, Lower does not—and, in fact, cannot—point to any economic transaction or business relationship between it and ACM, much less any that could plausibly support conferral of a benefit. Indeed, Lower itself describes ACM as its direct competitor. Compl., ECF No. 1 at PageID 2, ¶ 8. The Complaint does not allege any dealings between the companies from which a benefit could have been conferred. *See In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 684 F. Supp. 2d 942, 953 (N.D. Ohio 2009) (dismissing an unjust enrichment claim under Ohio law where plaintiffs failed to allege any economic transaction with the defendant). Because Lower fails to plausibly allege facts sufficient to state a claim for unjust enrichment (a claim upon which a constructive trust remedy could possibly attach), Count VI must be dismissed. *See Three-C Body Shops, Inc. v. Nationwide Mut. Fire Ins. Co.*, 81 N.E.3d 499, 506–07 (Ohio Ct. App. 2017) ("Because [plaintiff]'s claim failed to describe a benefit it conferred on [defendant] to support its unjust enrichment/quantum meruit claim, the trial court did not err when granting judgment in [defendant]'s favor on the claim."); *Paulus v. Beck Energy Corp.*, 94 N.E.3d 73, 98 (Ohio Ct. App. 2017) ( holding the elements of unjust enrichment were not established because "[t]he plaintiff did not confer a benefit on the defendant in the case at bar. Even more, the plaintiff was not entitled to the particular benefit at issue which was conferred on the defendant by a third-party."); *Wick v. Ach*, 139 N.E.3d 480, 486 (Ohio Ct. App. 2019) ("Simply pleading . . . that the other party was unjustly enriched by keeping money that 'properly belongs' to him leaves too much to the

19

imagination . . . Absent an indication in the pleading of the benefit conferred, [plaintiff]'s claim was properly dismissed.").

Lower's request for a constructive trust fails for another independent reason, i.e., it does not identify specific traceable property over which the constructive trust is to be placed by clear and convincing evidence. *Zillich v. Zillich*, No. 1:18 CV 540, 2019 WL 1385986, at *5 (N.D. Ohio Mar. 14, 2019) ("A party seeking a constructive trust bears the burden of producing clear and convincing evidence justifying it, and 'must specify the particular property over which the constructive trust is to be placed.'" (quoting *Estate of Cowling v. Estate of Cowling*, 847 N.E.2d 405, 412 (Ohio 2006)). Lower refers in vague terms to "revenues," "commissions," "profits," and "other benefits." Compl., ECF No. 1 at PageID 10, ¶¶ 66, 68. These forms of "property" are imprecise, highly speculative, and do not identify property capable of being placed into a trust. *Estate of Cowling*, 847 N.E.2d at 412 ("A claimant seeking the imposition of a constructive trust must specify the particular property over which the constructive trust is to be placed . . . A constructive trust is an equitable remedy that must be imposed on particular assets[.]"). In addition, the party seeking to impose a constructive trust bears the burden of producing clear and convincing evidence justifying the remedy. *Stewart*, 2023 WL 2401720, at *8. Lower does not allege facts that plausibly identify specific property, let alone facts justifying the need for this particular remedy. For this additional reason, Count VI should be dismissed.

V. **CONCLUSION**

Lower fails to state a plausible claim upon which relief can be granted as to **any** of its six claims in its Complaint. As a result, ACM respectfully requests that this Court grant its Motion in full and dismiss Lower's Complaint in its entirety.

20

Dated: April 16, 2026

Respectfully submitted,

**ATLANTIC COAST MORTGAGE, LLC**

By its attorneys,

*/s/ John F. Marsh*

John F. Marsh (Ohio Bar No. 0065345) – Trial Attorney
Bailey Cavalieri LLC
10 W. Broad Street, Ste. 2100
Columbus, OH 43215-3422
(614) 229-3230
jmarsh@baileycav.com

Donald W. Schroeder (*pro hac vice* forthcoming)
Massachusetts Bar No. 646700
Foley & Lardner LLP
111 Huntington Avenue
Boston, Massachusetts 02199
(617) 342-4000
dschroeder@foley.com

Carrie B. Hoffman (*pro hac vice* forthcoming)
Texas Bar No. 00787701
Foley & Lardner LLP
2021 McKinney Avenue, Suite 1600
Dallas, TX 75201
(214) 999-4262
choffman@foley.com

Jessica Glatzer Mason (*pro hac vice* forthcoming)
Texas Bar No. 24051001
Foley & Lardner LLP
1000 Louisiana Street, Suite 2000
Houston, TX 77002
(713) 276-5500
jmason@foley.com

Rachel Powitzky Steely (*pro hac* vice forthcoming)
Texas Bar No. 00792770
Foley & Lardner LLP
1000 Louisiana Street, Suite 2000
Houston, TX 77002
(713) 267-5500
rsteely@foley.com

21

**CERTIFICATE OF SERVICE**

I hereby certify that on April 16, 2026, I caused the foregoing document to be electronically

filed with the Clerk of Court using the CM/ECF system, effecting service upon the following:


Joseph F. Murray
Jonathan P. Misny
Murray Murphy Moul + Basil LLP
114 Dublin Road
Columbus, OH 43215
murray@mmmb.com
misny@mmmb.com


/s/ John F. Marsh
John F. Marsh (Ohio Bar No. 0065345) – Trial Attorney

22